No. 18-10638

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

STATE OF TEXAS,

Plaintiff-Appellee Cross-Appellant,

v.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
VICTORIA LIPNIC, in her official capacity as Acting Chair of the
EEOC; JEFFERSON B. SESSIONS, III, in his official capacity as
Attorney General for the United States,

Defendants-Appellants Cross-Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

_____

**BRIEF FOR APPELLANTS CROSS-APPELLEES**

_____

JOSEPH H. HUNT
  *Assistant Attorney General*

MARLEIGH D. DOVER
  (202) 514-3511
STEPHANIE R. MARCUS
  (202) 514-1633
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7539*
  *Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C. 20530-0001*

## STATEMENT REGARDING ORAL ARGUMENT

This appeal involves Texas's challenge to the Equal Employment Opportunity Commission's (EEOC) Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII, No. 915.002 (April 25, 2012) (EEOC Guidance or Guidance).  Following a remand from a prior appeal to this Court, the district court granted judgment in favor of Texas in part, and in favor of defendants the EEOC and the Attorney General in part.  The court also granted Texas injunctive relief.

Defendants are appealing the district court's judgment on the grounds that Texas lacks Article III standing, that the Guidance is not final agency action, and that, even assuming *arguendo* that Texas was entitled to any relief, the injunction issued by the district court is impermissibly vague and overbroad.  This appeal thus raises important legal issues that have implications beyond this case.  We believe that oral argument would help the Court to resolve these issues, and therefore respectfully request oral argument.

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT

STATEMENT OF JURISDICTION ....................................................................1

STATEMENT OF THE ISSUES.........................................................................1

STATEMENT OF THE CASE ...........................................................................3

    A.      Nature of the Case and Factual Background.............................3

    B.      Statutory and Regulatory Background ......................................3

          1.     Relevant Provisions of Title VII...................................3

          2.     EEOC Guidance .............................................................6

    C.      The Present Litigation ...............................................................8

SUMMARY OF ARGUMENT...........................................................................13

STANDARD OF REVIEW ...............................................................................17

ARGUMENT .....................................................................................................17

I.      TEXAS LACKS STANDING TO CHALLENGE THE EEOC
      GUIDANCE.............................................................................................17

II.    THE EEOC GUIDANCE IS NOT FINAL AGENCY ACTION .................26

    A.      The EEOC Guidance Does Not Create Legal Consequences.................27

    B.      The District Court's Analysis Fails to Support a Holding
          That the Guidance is Reviewable Final Agency Action............................28

III.   THE DISTRICT COURT'S INJUNCTION IS IMPERMISSIBLY
      VAGUE AND OVERBROAD ................................................................39

CONCLUSION ............................................................................................................41

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*American Hosp. Ass'n v. Bowen*,
  834 F.2d 1037 (D.C. Cir. 1987) ...................................................30

*American Tort Reform Ass'n v. OSHA*,
  738 F.3d 387 (D.C. Cir. 2013) .............................................. 30, 37

*Appalachian Power Co. v. EPA*,
  208 F.3d 1015 (D.C. Cir. 2000) ...............................................30

*AT&T v. EEOC*,
  270 F.3d 973 (D.C. Cir. 2001) ................................................37

*Barrick Goldstrike Mines Inc. v. Browner*,
  215 F.3d 45 (D.C. Cir. 2000) ..................................................30

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................18

*Bennett v. Spear*,
  520 U.S. 154 (1997) ...............................................................26

*Borg-Warner Protective Servs. Corp. v. EEOC*,
  245 F.3d 831 (D.C. Cir. 2001) ...............................................31

*Chandler v. Roudebush*,
  425 U.S. 840 (1976) ........................................................... 5, 29

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) .................................................................25

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ...............................................................25

*EEOC v. Arabian Am. Oil Co.*,
  499 U.S. 244 (1991) ............................................................ 6, 30

*Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*,
  543 F.3d 586 (9th Cir. 2008) ..................................................38

*FDIC v. Faulkner,*
991 F.2d 262 (5th Cir. 1993) ..........................................................17

*Federal Trade Comm'n v. Standard Oil Co.,*
449 U.S. 232 (1980) ..........................................................31

*Firefighters Inst. for Racial Equality v. City of St. Louis,*
549 F.2d 506 (8th Cir. 1977) ..........................................................36

*Fitzpatrick v. Bitzer,*
427 U.S. 445 (1976) ..........................................................3

*Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA,*
313 F.3d 852 (4th Cir. 2002) ..........................................30, 35, 37

*Griggs v. Duke Power Co.,*
401 U.S. 424 (1971) ..........................................................6, 21

*Hodges v. Delta Airlines, Inc.,*
44 F.3d 334 (5th Cir. 1995) ..........................................................17

*Jobs, Training & Servs., Inc. v. East Texas Council of Gov'ts,*
50 F.3d 1318 (5th Cir. 1995) ..........................................................31

*Louisiana State v. United States Corps of Army Eng'rs,*
834 F.3d 574 (5th Cir. 2016) ..........................................28, 37

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ..........................................................19, 24

*Luminant Generation Co., LLC v. EPA,*
757 F.3d 439 (5th Cir. 2014) ..........................................27, 28, 30, 37, 38

*National Ass'n of Home Builders v. Norton,*
415 F.3d 8 (D.C. Cir. 2005) ..........................................................28

*National Pork Producers Council v. EPA,*
635 F.3d 738 (5th Cir. 2011) ..........................................................26

*New York Transit Auth. v. Beazer,*
440 U.S. 568 (1979) ..........................................................21

*Newsome v. EEOC,*
301 F.3d 227 (5th Cir. 2002) ..........................................................31

*Papasan v. Allain*,
    478 U.S. 265 (1986) ....................................................................18

*Peoples Nat'l Bank* v. *Office of the Comptroller of the Currency of the U.S.*,
    362 F.3d 333 (5th Cir. 2004) ..............................................17, 26, 28

*Stockman v. FEC*,
    138 F.3d 144 (5th Cir. 1998) ......................................................24

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ....................................................................19

*Texas v. EEOC*:
    827 F.3d 372 (5th Cir.), *reh'g en banc granted, opinion withdrawn*,
        838 F.3d 511 (5th Cir. 2016) ..........................10, 32, 33, 35, 37
    838 F.3d 511 (5th Cir. 2016) ......................................................10

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*,
    136 S. Ct. 1807 (2016) ........................... 10, 26, 33, 34, 35, 36

*United States v. City of Warren*,
    138 F.3d 1083 (6th Cir. 1998) ....................................................36

*United States v. County of Fairfax*,
    629 F.2d 932 (4th Cir. 1980) ......................................................36

*United Stated v. Jacksonville Terminal Co.*,
    451 F.2d 418 (5th Cir. 1971) ......................................................36

*United States v. Lee Way Motor Freight, Inc.*,
    625 F.2d 918 (10th Cir. 1979) ....................................................36

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*,
    529 U.S. 765 (2000) ....................................................................25

*Watson v. Fort Worth Bank & Tr.*,
    487 U.S. 977 (1988) ....................................................................21

**Statutes:**

5 U.S.C. § 704.................................................................................26

28 U.S.C. § 1291 .............................................................................1

28 U.S.C. § 1331 .............................................................................1

Civil Rights Act of 1991, Pub. L. No. 102-166,
    105 Stat. 1071 (Nov. 21, 1991)                21

Title VII, Civil Rights Act of 1964,
    42 U.S.C. § 2000e *et seq.*.............................................3

    42 U.S.C. § 2000e-2(a)(2).................................................6
    42 U.S.C. § 2000e-2(k)(1)(A)...........................................22
    42 U.S.C. § 2000e-2(k)(1)(A)(i).........................................6
    42 U.S.C. § 2000e-5(b).............................4, 18, 20, 29, 31
    42 U.S.C. § 2000e-5(e)(1)..................................................4
    42 U.S.C. § 2000e-5(f)(1)...........................4, 5, 18, 20, 31
    42 U.S.C. § 2000e-5(k).....................................................36
    42 U.S.C. § 2000e-6(a) ...............................................5, 35
    42 U.S.C. § 2000e-7...........................................................5
    42 U.S.C. § 2000e-12(a) ....................................................6

**Regulation:**

28 C.F.R. § 0.50.................................................................................5

**Rules:**

Fed. R. Civ. P. 59(e) ................................................................ 1, 13

Fed. R. Civ. P. 65(d)(1)(B)...............................................................39

Fed. R. Civ. P. 65(d)(1)(C) ...............................................................39

**Other Authorities:**

Memorandum from the Assoc. Att'y Gen. on Limiting Use of Agency
Guidance Documents in Affirmative Civil Enforcement Cases
(Jan. 25, 2018), https://www.justice.gov/file/1028756/download. .................14, 23, 40

# STATEMENT OF JURISDICTION

Plaintiff, the State of Texas, invoked the district court's jurisdiction under 28 U.S.C. § 1331 in challenging the validity of a federal agency's guidance document under the Administrative Procedure Act (APA). ROA.1221. On February 1, 2018, the district court issued an order granting plaintiff's motion for summary judgment in part and denying it in part, and granting defendants' motion for summary judgment in part and denying it in part. ROA.2437-2440. That same day, the court issued a final judgment, which provided injunctive relief to Texas on the claim on which it prevailed and dismissed the remainder of Texas's claims. ROA.2441. On March 1, 2018, defendants filed a timely motion to amend the judgment under Federal Rule of Civil Procedure 59(e). ROA.2449-2458. On March 27, 2018, the district court denied the motion. ROA.2472. Defendants filed a timely notice of appeal on May 25, 2018, ROA.2473, and Texas filed a timely notice of cross-appeal on June 6, 2018. ROA.2476. This Court has jurisdiction over the appeal and cross-appeal under 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

Texas challenges the Equal Employment Opportunity Commission's (EEOC or Commission) Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII, No. 915.002

(Apr. 25, 2012) (EEOC Guidance or Guidance).  Texas sought relief pursuant to the APA and the Declaratory Judgment Act against both the EEOC (even though the EEOC does not and cannot enforce its Guidance against Texas, because the Department of Justice enforces Title VII against the State) and the Attorney General (even though the Department of Justice has not endorsed the EEOC's Guidance and, in fact, the Department disagrees with the EEOC's approach and analysis with respect to disparate impact claims in numerous respects).  Following a remand from a prior appeal to this Court, the district court granted judgment in favor of Texas in part, and in favor of defendants in part.  The questions presented are as follows:

1.  Whether the district court erred by holding that Texas has standing to challenge the EEOC Guidance.

2.  Whether the district court erred by holding that the EEOC Guidance is final agency action under the APA.

3.  Whether, even assuming *arguendo* that the district court properly granted partial summary judgment to Texas, the court's remedial order should be vacated because it is vague and overbroad.

## STATEMENT OF THE CASE

### A.  Nature of the Case and Factual Background

In the present action, plaintiff, the State of Texas, filed suit against the Chair of the EEOC and the Attorney General of the United States in their official capacities challenging the EEOC Guidance under the APA.  See ROA.1220-1221 ¶¶ 1-5.  The Guidance sets forth the EEOC's views on the application of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, to an employer's use of criminal history records when making employment decisions.  See ROA.1239-1293.  The district court ultimately granted summary judgment to Texas in part, and to defendants in part.  ROA.2439-2440.  The court entered a final judgment that granted injunctive relief to Texas on its claim that the EEOC violated APA notice-and-comment requirements in promulgating the Guidance and dismissed the remainder of Texas's requests for declaratory and injunctive relief.  ROA.2441.

### B.  Statutory and Regulatory Background

#### 1.  Relevant Provisions of Title VII

In 1972, Congress amended Title VII of the Civil Rights Act of 1964 to, *inter alia*, extend the statute's coverage to state and local government employers.  See *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976).  The EEOC plays a more limited role in implementing Title VII with respect to states, however, than it does with respect to private employers.  Although the EEOC investigates charges of discrimination filed

against state employers and may engage in conciliation efforts, the agency cannot bring an enforcement action against a state.  See 42 U.S.C. § 2000e-5(f)(1).  Instead, the Department of Justice enforces Title VII against state governments.  *Id.*

    **a.**  To initiate the administrative process under Title VII, a state employee or job applicant must file a charge with the EEOC within 180 or 300 days of the allegedly unlawful employment practice.  42 U.S.C. § 2000e-5(b), (e)(1).  The EEOC then investigates the charge, and, "as promptly as possible," makes a determination as to whether there is reasonable cause to believe that the employer violated Title VII.  42 U.S.C. § 2000e-5(b).  If the Commission does not find reasonable cause, it must dismiss the charge and "promptly" provide notice (commonly referred to as a right-to-sue letter) to the state employee or applicant, who may then file suit in district court within ninety days of receiving the notice.  42 U.S.C. § 2000e-5(b), (f)(1).

    If the Commission does find "reasonable cause to believe that the charge is true," it initiates informal conciliation with the state employer, in which it attempts to facilitate settlement.  See 42 U.S.C. § 2000e-5(b).  But if such conciliation fails, the EEOC cannot bring an enforcement action against the State.  42 U.S.C. § 2000e-5(f)(1).  Rather, the EEOC "shall take no further action" after the conclusion of conciliation efforts and "shall refer the case to the Attorney General who may bring a

civil action" against the State in district court. *Id.*[1]  The civil action would be a *de novo*

determination of the State's liability, if any, under Title VII.  See *Chandler v. Roudebush*,

425 U.S. 840, 844-45 (1976).  The Attorney General has delegated enforcement

authority under Title VII to the Assistant Attorney General for the Civil Rights

Division.  See 28 C.F.R. § 0.50.  In addition, the Department of Justice has authority

under Section 707(a) of Title VII to file a pattern or practice action against a state

government without a charge being filed with the EEOC (and therefore without

EEOC investigation or referral).  42 U.S.C. § 2000e-6(a).

> **b.**  In Title VII, Congress included a specific provision regarding the statute's

effect on state law liabilities and duties:

> > Nothing in this subchapter shall be deemed to exempt or relieve
> > any person from any liability, duty, penalty, or punishment
> > provided by any present or future law of any State or political
> > subdivision of a State, *other than any such law which purports to require
> > or permit the doing of any act which would be an unlawful employment
> > practice under this subchapter.*

42 U.S.C. § 2000e-7 (emphasis added).  And under Title VII, as interpreted by the

Supreme Court and amended by Congress in 1991, a plaintiff establishes an "unlawful

---

[1]  Alternatively, if "within one hundred and eighty days from the filing of [the] charge" the Commission has not entered into a conciliation agreement or the Attorney General has not filed a civil action, the Commission − or, where applicable, the Attorney General − must provide notice to the employee or applicant, who may file suit in district court within ninety days of such notice.  42 U.S.C. § 2000e-5(f)(1).

employment practice based on disparate impact" if he "demonstrates that [an employer] uses a particular employment practice that causes a disparate impact on the basis" of a protected characteristic and the employer "fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i); see also 42 U.S.C. § 2000e-2(a)(2); *Griggs v. Duke Power Co.*, 401 U.S. 424, 429-31 (1971).

**c.** Although Congress granted the EEOC express authority to promulgate procedural regulations to implement Title VII, the Commission lacks authority to issue substantive rules and regulations. See 42 U.S.C. § 2000e-12(a); *EEOC* v. *Arabian Am. Oil Co.*, 499 U.S. 244, 257 (1991).

## 2. EEOC Guidance

In April 2012, the EEOC issued the "Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII" that is the subject of this action. ROA.1239-1293. The Guidance sets forth the EEOC's views on how an employer's use of criminal history in making employment decisions may implicate Title VII prohibitions against discrimination. See ROA.1242. In the Guidance, the EEOC states that "[a]n employer's use of an individual's criminal history in making employment decisions may, in some instances, violate the prohibition against employment discrimination under Title VII[.]" *Id.* With respect to disparate impact liability under Title VII, the Guidance provides that

6

"[a]n employer's neutral policy (*e.g.*, excluding applicants from employment based on certain criminal conduct) *may* disproportionately impact some individuals protected under Title VII, and *may* violate the law if not job related and consistent with business necessity." *Id.* (emphasis added).

The agency noted that, during an investigation, in assessing whether an employer's practice has a prohibited disparate impact, it engages in a fact-based inquiry: It (i) identifies the "particular policy or practice" at issue, (ii) reviews statistical data on whether the practice has a disparate impact on a protected class, and, (iii) if necessary, determines whether facts demonstrate that the practice is "job-related and consistent with business necessity." ROA.1250-1256.

The EEOC issued the Guidance to "update and consolidate" the agency's prior guidance documents containing its non-binding interpretation of Title VII's applicability to employers' use of criminal history in employment decisions. See ROA.1244. As the agency explained, "[i]n light of employers' increased access to criminal history information, case law analyzing Title VII requirements for criminal record exclusions, and other developments," it "decided to update and consolidate" in the 2012 Guidance "all of its prior policy statements about Title VII and the use of criminal records in employment decisions." *Id.*

The Guidance states that it "builds on * * * existing guidance documents" that the EEOC had "issued over twenty years ago." ROA.1242. These prior guidance

documents show that the EEOC has previously held the view that policies that exclude applicants based on criminal history records may violate Title VII. ROA.663-667 (EEOC Policy Statement on the Issue of Conviction Records under Title VII (Feb. 4, 1987); Policy Statement: Conviction Records – Statistics (July 29, 1987)). The Guidance does not prohibit any particular employer policy with respect to the use of criminal history records, however; instead, it sets forth the agency's views on considerations that would inform a determination in its reasonable-cause findings and in any potential future agency enforcement action against non-state employers.

Since the EEOC promulgated the Guidance, the Department of Justice has not filed any Title VII enforcement actions against Texas or any other state employer based on the use of criminal history records. And, with respect to disparate impact claims, the Department of Justice disagrees with certain aspects of the Guidance's analysis and approach. See *infra* pp. 21-23.

### C. The Present Litigation

**1.** On November 4, 2013, Texas filed the present action in the United States District Court for the Northern District of Texas against the EEOC and the Chair of the EEOC. ROA.24. Texas filed an amended complaint on March 18, 2014, adding the Attorney General of the United States as a defendant. ROA.306.

Texas stated that it "employs hundreds of thousands of people," and that, "[f]or many state jobs, state law and longstanding hiring policies impose absolute bans

on hiring convicted felons (or in some instances persons convicted of certain categories of felonies)." ROA.313 ¶ 23. Texas sought a declaration of its "right to maintain and enforce its law and policies that absolutely bar convicted felons (or certain categories of convicted felons) from serving * * * [in] any [] job the State and its Legislature deem appropriate." ROA.321 ¶ 43. Texas alleged that while "there is no risk that [it] could incur" liability for disparate treatment based on such policies, the policies pose a risk of enforcement actions against the State based on the provisions of the Guidance addressing disparate impact under Title VII. See ROA.316-317 ¶¶ 31-32. Texas also sought an injunction against enforcement of the EEOC Guidance by the EEOC or by the Attorney General, and against the issuance of right-to-sue letters to private parties based on the Guidance. ROA.321 ¶ 44. Texas further requested that the court invalidate the Guidance as an unauthorized substantive rule issued without notice and comment in violation of the APA. ROA.321-322 ¶¶ 48-49.

Defendants filed a motion to dismiss the First Amended Complaint for lack of jurisdiction. ROA.514. Defendants argued that the Guidance was not final agency action under the APA, Texas lacked standing, and Texas's challenge to the Guidance was not ripe for review. See ROA.518-547. The district court granted defendants' motion. ROA.880-888.

**2.** Texas appealed, and a divided panel of this Court reversed the district court's judgment. *Texas v. EEOC*, 827 F.3d 372 (5th Cir. 2016) (*Texas I*). The panel majority held that Texas had Article III standing, that the EEOC Guidance was final agency action, and that the action was ripe for review. *Id.* at 377-88. Judge Higginbotham dissented. *Id.* at 388-96.

Defendants filed a petition for rehearing, which this Court granted. *Texas v. EEOC*, 838 F.3d 511 (5th Cir. 2016). The Court withdrew its prior opinion, vacated the district court's judgment, and remanded with instructions "to reconsider this case, and its opinion, in its entirety and to address the implications of" the Supreme Court's intervening decision in *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807 (2016) "for this case." *Id.*

**3.** On remand, after supplemental briefing, the district court denied defendants' motion to dismiss. Although the court recognized that this Court had granted rehearing and withdrawn its opinion, it found that "the discussion contained in [*Texas I*] by the majority is instructive to this Court's opportunity to re-examine the issues of standing, ripeness, and 'final agency action.'" ROA.1107. The district court adopted the panel majority's analysis of all three issues. See ROA.1107-1109. The court ruled that Texas sufficiently alleged injury at the motion to dismiss stage, since, in its view, taking the allegations of the complaint as true, "the Guidance amounts to an increased regulatory burden on Texas as an employer and forces Texas to undergo

10

an analysis of each agency's hiring practices and policies." ROA.1109. Based on the panel majority's finding that the Guidance binds EEOC employees in investigations and establishes two safe harbors for employers, the district court held that the Guidance was final agency action. *Id.*

Texas subsequently filed a second amended complaint in district court, which included two counts. ROA.1220-1236. In Count One, Texas sought a declaratory judgment affirming "its right to maintain and enforce its laws and policies that absolutely bar convicted felons (or certain categories of convicted felons) from serving * * * [in] any [ ] job Texas and its Legislature deem appropriate." ROA.1234 ¶ 43, Texas also sought an injunction prohibiting defendants from enforcing the "interpretation of Title VII that appears in" the EEOC Guidance and barring the EEOC from issuing right-to-sue letters. *Id.* ¶ 44. In Count Two, Texas requested that the court invalidate the EEOC Guidance as an unauthorized substantive rule issued without notice and comment in violation of the APA. ROA.1235 ¶¶ 48-49.

Following discovery, the parties filed cross-motions for summary judgment. ROA.1508; ROA.1674. The district court granted summary judgment in part to defendants with respect to Count I of Texas's second amended complaint. ROA.2439. The court "decline[d] to declare that Texas has a right to maintain and enforce its laws and policies that absolutely bar convicted felons (or certain categories

of convicted felons) from serving in any job the State and its Legislature deems appropriate," or to "enjoin the EEOC from issuing right-to-sue letters." *Id.*

With respect to Count II, in which Texas sought relief under the APA, the court held that the Guidance "is a substantive rule issued without notice and the opportunity for comment." ROA.2439-2440. It granted Texas's request for an injunction barring defendants "from enforcing the EEOC's interpretation of the Guidance against the State of Texas until the EEOC has complied" with APA notice-and-comment requirements. ROA.2440. The court declined to reach Texas's claims that the Guidance was beyond EEOC's statutory authority and contrary to Title VII, however, because "such findings are not necessary to the adjudication" of Texas's APA claim and it "would be premature at this time" to rule on such claims. *Id.* Although defendants raised the argument that Texas lacked standing with new support from discovery and the summary judgment record, the district court did not address standing in its opinion. ROA.2437-2440. Accordingly, the court granted Texas's motion for summary judgment in part and denied it in part with respect to Count II. *Id.*

The court entered a final judgment, which provided that the "EEOC and the Attorney General of the United States (in any enforcement action against the State of Texas) are **ENJOINED** from enforcing the EEOC's interpretation of the Guidance against the State of Texas until the EEOC has complied with the notice and comment

requirements under the APA for promulgating an enforceable substantive rule."
ROA.2441. Defendants filed a motion to amend the judgment and for clarification
pursuant to Federal Rule of Civil Procedure 59(e), ROA.2449, which the district court
denied on March 27, 2018. ROA.2472.

## SUMMARY OF ARGUMENT

This Court should reject Texas's attempt to obtain pre-enforcement review of a
non-binding policy guidance that imposes no legal obligations or consequences on
Texas or any other employer. The district court should not have adjudicated this
dispute at all because Texas lacks standing to challenge the Guidance and the
Guidance is not final agency action. And regardless, even if it were proper for the
district court to grant any relief to Texas on the merits, the injunction the court issued
goes far beyond the relief warranted for a purported violation of APA procedural
requirements.

**1.a.** Texas lacks standing because the Guidance does not require the State (or
any other employer) to *do* anything. No legal consequences flow from the Guidance,
nor does it impose any obligations on employers, and thus, it does not inflict any
harm on Texas. The EEOC cannot enforce Title VII against Texas, and Title VII
would require the Commission to investigate complaints and issue right-to-sue letters
even in the absence of the Guidance. Moreover, in any potential court action
challenging Texas's or any other employer's use of criminal history records in making

employment decisions, the court would determine *de novo* whether the employer violated relevant provisions of Title VII, not whether it violated the Guidance. Even assuming *arguendo* that Texas had sufficiently alleged an injury-in-fact related to such a potential court action, it thus would not be traceable to the Guidance.

**b.** Texas's lack of standing is even clearer with respect to its action against the Attorney General, who did not promulgate the Guidance. The Guidance does not bind the Attorney General, and Texas has not provided any evidence that the Department of Justice would seek to enforce the EEOC's interpretation of Title VII contained in the Guidance. To the contrary, with respect to Title VII disparate impact claims challenging state and local government employers' use of criminal history records in employment decisions, the Department disagrees with the approach and analysis of the EEOC in numerous respects. Moreover, current Department policy makes clear that the Department is barred from "enforc[ing]" any provision of the Guidance itself (as opposed to the underlying provisions of Title VII). See https://www.justice.gov/file/1028756/download. Thus, there is no material probability that the Department of Justice would seek to enforce the Guidance at all, and therefore, no material probability that it would be enforced against Texas.

**c.** The district court therefore erred by denying defendants' motion to dismiss for lack of standing. Texas's allegations of injury are too speculative to confer standing and in any event would stem from Title VII, not the Guidance. The district

14

court compounded its error at the summary judgment stage, when, following discovery, it failed to address defendants' renewed challenge to Texas's standing after Texas presented no evidence that the Guidance caused, or was likely to cause, it any injury.

**2.**  The district court further erred by holding that the Guidance is final agency action.  The EEOC Guidance that Texas challenges here is just that – guidance.  It has no legal consequences, nor does it impose any obligations on Texas, its state agencies, or other employers.  It is the Department of Justice that enforces Title VII against state employers, and neither the Department nor the courts are bound by the EEOC's views as set forth in the Guidance.

Texas's characterization of the Guidance as the "Felon-Hiring Rule" (*e.g.*, ROA.1220-1236) does not change the reality that the Guidance does not require employers to take *any* action, much less hire felons, or that the Department of Justice, not the EEOC, is the only governmental entity that has the authority to enforce Title VII against state employers.  The Guidance does not reach any conclusions about the validity of Texas's employment policies.  Although Texas alleges that it has been harmed by the Guidance, the State has not identified any penalties, sanctions, or legal requirements imposed on it by the Guidance.

**3.**  Even assuming *arguendo* that it was proper for the district court to grant injunctive relief to Texas, this Court should vacate the injunction as vague and

overbroad.  In its order denying defendants' Rule 59(e) motion, the district court did

not clarify whether the injunction against enforcement of "the EEOC's interpretation

of the Guidance" means that the EEOC and the Attorney General are barred from

enforcing the Guidance as such, or that they are barred from enforcing any

interpretation of Title VII that is reflected in the Guidance.  Because the court ruled

against the EEOC solely on procedural grounds and did not rule on the substantive

validity of any interpretation of Title VII in the Guidance, only the former

interpretation is consistent with the court's legal holding.

The district court's injunction also is overbroad because it enjoins the Attorney

General as well as the EEOC without any legal basis.  The district court plainly cannot

limit the Attorney General's future enforcement of Title VII itself based on a

purported violation of APA notice-and-comment requirements by the EEOC in its

promulgation of non-binding interpretive guidance, which the Department of Justice

has neither adopted nor enforced against state and local government employers.  In

fact, the Department disagrees with the overall approach to analyzing disparate impact

claims as set forth in the Guidance, and current Department policy prohibits the Civil

Rights Division from "enforcing" the Guidance itself (as opposed to the underlying

provisions of Title VII).  Thus, even if the EEOC had violated procedural APA

notice-and-comment rulemaking requirements in promulgating the Guidance, that

would not provide any basis for enjoining the Attorney General from enforcing any particular interpretation of Title VII that happens to be embodied in the Guidance.

## STANDARD OF REVIEW

This Court reviews *de novo* whether a district court had jurisdiction. See *Peoples Nat'l Bank* v. *Office of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004). This Court also reviews the district court's disposition of a summary judgment motion under a *de novo* standard. *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 335 (5th Cir. 1995) (en banc). Whether the scope of the district court's injunction is impermissibly vague and overbroad involves legal questions that this Court reviews *de novo*. See *FDIC v. Faulkner*, 991 F.2d 262, 267 (5th Cir. 1993).

## ARGUMENT

## I. TEXAS LACKS STANDING TO CHALLENGE THE EEOC GUIDANCE.

**A.** Following remand from this Court and additional briefing, the district court held that Texas has Article III standing, not only at the motion to dismiss stage when it accepted Texas's allegations of regulatory burden as true, but also at the summary judgment stage, when defendants again challenged Texas's standing following discovery. Although particularly erroneous at the summary judgment stage, the court's ruling was erroneous even at the motion to dismiss stage because allegations in a complaint are not sufficient to support standing where, as here, they are based on

erroneous legal conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Texas has failed to sufficiently allege or establish an injury-in-fact that is fairly traceable to challenged actions by either the EEOC or the Attorney General. The Guidance is not binding on Texas or any other employer. In the absence of the Guidance, Title VII's prohibition on disparate impact discrimination would remain unchanged. The EEOC cannot enforce Title VII against Texas, and it is Title VII (not the Guidance) that requires the Commission to investigate complaints by individual applicants or employees and to issue right-to-sue letters. See 42 U.S.C. § 2000e-5(b), (f)(1). The district court thus erred by crediting Texas's allegation that the Guidance "amounts to an increased regulatory burden on Texas as an employer and forces Texas to undergo an analysis of each agency's hiring practices and policies." ROA.1109.

Contrary to Texas's allegations, the Guidance does not compel Texas to do anything. The Guidance does not force employers to change their behavior; nor does it force them to choose between changing employment policies or facing increased costs or liability. Cf. ROA.1230-1232 ¶¶ 32-37; ROA.316-319 ¶¶ 32-37. Rather, the Guidance merely reflects the EEOC's longstanding views concerning the circumstances in which policies that exclude applicants based on criminal history

records may violate Title VII—views that, it bears emphasizing, are not those of the Department of Justice, which is the governmental entity with enforcement authority vis-a-vis Texas.

The district court's reliance on the proposition that Texas has standing because it is an "object" of the Guidance is therefore misplaced. See ROA.1108-1109. The proposition that where a plaintiff is "an object of the [agency's] action," there is "ordinarily little question that the action * * * has caused him injury," assumes a final agency action from which legal consequences flow—the prototypical example being a substantive, legislative rule promulgated after notice and comment and intended to be binding. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992). The Guidance at issue here does not have any such effect, and thus has not caused Texas any injury, nor will it injure Texas in the future.

That Texas also claimed that its procedural rights were violated under the APA does not change the result. Texas must still show that the alleged procedural violation resulted in an agency action that substantively injures it in a manner that would be redressable by a favorable court judgment. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("deprivation of a procedural right without some concrete interest that is affected by the deprivation * * * is insufficient to create Article III standing"). Texas cannot do so here, because in the absence of the allegedly procedurally defective Guidance, Title VII's substantive prohibitions on discrimination would still apply to

the same extent, as would the EEOC's obligation to investigate alleged violations of that prohibition.

Texas's allegations regarding the EEOC's issuance of a right-to-sue letter to a private individual who filed an administrative charge against the Texas Department of Public Safety also fail to sufficiently allege an injury "fairly traceable" to the Guidance. See ROA.1232 ¶ 37; ROA.319 ¶ 37. The Guidance plainly did not cause the EEOC to issue a right-to-sue letter after an investigation in which the agency was "*unable to conclude* that the information obtained establishes violation of the statutes." ROA.1300 (emphasis added). Indeed, it is Title VII, not the Guidance, which requires that the EEOC give notice to individual applicants or employees of their right to file a civil action if, after investigation of the charge, the agency does not have reason to believe that Title VII has been violated. 42 U.S.C. § 2000e-5(b), (f)(1). In fact, under Texas's theory of the case, it would have standing to sue the EEOC for a declaratory judgment based on Title VII's requirement that the EEOC issue a right-to-sue letter even when, after investigation, the agency affirmatively found no reasonable cause to conclude that the employer committed a statutory violation. The requisite case or controversy in such circumstances is between the employer and the individual claimant, *not* the employer and the EEOC.

**B.** Texas's lack of standing is even more apparent with respect to its claims against the Attorney General. The Department of Justice did not promulgate the

Guidance, and the Department neither enforces the Guidance nor is bound by it. Texas's alleged injury from the EEOC's promulgation of the Guidance without notice-and-comment rulemaking therefore is not "fairly traceable" to the Attorney General.

Moreover, in the context of employers' use of criminal history in employment decisions, the Department of Justice disagrees in numerous respects with the Guidance's analysis of disparate impact claims. For example, in *Watson v. Fort Worth Bank & Trust*, a plurality of the Supreme Court held that no evidence of job-relatedness is required where it is obvious that "legitimate goals were 'significantly served by' the exclusionary rule . . . even though the rule was not required by those goals." 487 U.S. 977, 998 (1988) (plurality op.) (quoting *New York Transit Auth. v. Beazer,* 440 U.S. 568, 587 n.31 (1979)); see also Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 §3 (Nov. 21, 1991) (1991 Act intended to "codify the concepts of 'business necessity' and 'job related' enunciated by the Supreme Court in *Griggs v. Duke Power Co.*, 401 U.S. 124 (1971), and in the other Supreme Court decisions prior to *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989)"). In contrast, the Guidance suggests that to establish the affirmative defense that "a criminal conduct exclusion that has a disparate impact is job related and consistent with business necessity under Title VII, the employer needs to show that the policy operates to effectively link specific criminal conduct, and its dangers, with the risks

21

inherent in the duties of a particular position." ROA.1255. Thus, the Department interprets the "job-related and consistent with business necessity" defense to Title VII disparate impact claims more broadly, and therefore would find that individualized assessments are necessary in far fewer instances than the standard articulated in the EEOC's Guidance.

In addition, the Department's approach with respect to a claimant's burden of proof in providing statistical evidence to establish a *prima facie* case of disparate impact significantly differs from the EEOC's view regarding what type of data is sufficient to warrant further investigation. Specifically, under 42 U.S.C. 2000e-2(k)(1)(A), Title VII's particularity requirement is employer-specific and cannot be satisfied by national data divorced from the employer's hiring practices; it is therefore plaintiff's burden to show that an employer "uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." To be sure, there are differences between the statistical evidence that would be sufficient to warrant further investigation and the statistical evidence necessary to establish a *prima facie* case of disparate impact, but unlike the opinion expressed in the Guidance (cf. ROA.1251), the Department does not believe that nationwide data regarding arrest or conviction rates is probative of whether a particular employer's policy has a prohibited disparate impact.

The substantial differences between the approaches of the EEOC and the Department of Justice explain why Texas has been unable to provide evidence that the Department agrees with the EEOC's approach to analyzing disparate impact claims in the Guidance or has ever sought to enforce it. To be clear, we are not suggesting that this Court should examine the relative merits of the analysis set forth in the Guidance; rather, the Court lacks jurisdiction to do so. These differences in approach between the Department of Justice and the EEOC, however, starkly underscore that conclusion.

Indeed, in an enforcement action against Texas (or any other state or local government), the Department of Justice would enforce only Title VII. That is especially so because the Guidance cannot be enforced per se, and in any event, current Department policy bars the Department from seeking to "enforce" the Guidance per se in any Title VII enforcement action it may bring. See Memorandum from the Assoc. Att'y Gen. on Limiting Use of Agency Guidance Documents in Affirmative Civil Enforcement Cases (Jan. 25, 2018) ("AAG Memo"), https://www.justice.gov/file/1028756/download ("effective immediately for [Affirmative Civil Enforcement Cases], the Department may not use its enforcement authority to effectively convert agency guidance documents into binding rules"). For these reasons, including that the Department of Justice believes that consideration of

criminal history is more appropriate than EEOC's Guidance suggests, Texas lacks

standing to pursue any claim challenging the Guidance against the Attorney General.

**C.**  Furthermore, the district court compounded its error in denying

defendants' motion to dismiss when it failed even to address defendants' arguments

regarding standing following discovery and summary judgment briefing.  At the

summary judgment stage, Texas can no longer rely on "mere allegations," but "must

set forth by affidavit or other evidence specific facts" to support its claims of injury.

*Lujan*, 504 U.S. at 555, 561.  And, "[a]s the party asserting federal jurisdiction," Texas

"bears the burden of demonstrating that jurisdiction is proper."  *Stockman v. FEC*, 138

F.3d 144, 151 (5th Cir. 1998).  Texas cannot meet this burden here.  Texas's

allegations that the Guidance has increased its regulatory burden thus should be

rejected not only because they are flawed on their face, but also because Texas failed

to support them with any evidence.

Here, discovery revealed that the Guidance has not caused Texas any

cognizable injury.  Indeed, following discovery, Texas failed to cite any Department of

Justice enforcement proceedings brought against it in relation to the Guidance (see

ROA.1650; ROA.1644), or to provide any example where it or even any other state or

local governmental entity has altered its laws, policies, regulations, or practices in

response to the Guidance.  See ROA.1651-1652; ROA.1646-1648.  Texas presented

evidence of only one of its agencies, the Department of Public Safety (DPS), that has

engaged in analysis of its laws, policies, regulations, or practices in response to the Guidance. See ROA.1625-1626. But, even with respect to DPS, Texas states only that the agency did such an analysis in the past, not that it intends to do one in the future. See *id.* Past injuries alone do not support prospective relief, which is what Texas seeks here. See *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

In any event, because the Guidance does not impose any liability or prohibitions beyond the provisions of Title VII, any analysis undertaken by state agencies is not, as a legal matter, attributable to the Guidance, and is not redressable by the relief that Texas seeks. See *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) ("respondents' self-inflicted injuries are not fairly traceable to the Government's purported activities"). Nor is the Texas Attorney General's analysis of Texas's laws, policies, regulations, or practices in connection with this case evidence of regulatory burden caused by the Guidance. Cf. ROA.1646-1647. Texas cannot rely on any allegations of regulatory burden created by its own lawsuit as an injury that would support standing. See *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000).

Although defendants raised these arguments when they challenged Texas's standing in the summary judgment briefing, the district court did not address standing in its opinion. See ROA.2437-2440. Defendants' Rule 59(e) motion thus requested that the court clarify the basis for its implicit finding that Texas has standing, but the

court declined to do so, stating only that the judgment "speaks for itself." ROA.2472. The district court made its sole findings regarding standing at the motion to dismiss stage when it had to assume that Texas's allegations were true. That alone is reason the court committed reversible error in failing to require Texas to satisfy the more searching summary judgment standard.

## II.  THE EEOC GUIDANCE IS NOT FINAL AGENCY ACTION.

Under the APA, a court may review only "final agency action." 5 U.S.C. § 704; see *Peoples Nat'l Bank* v. *Office of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004). To qualify as "final," an agency's action must (1) "mark the 'consummation' of the agency's decisionmaking process," *and* (2) it "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett* v. *Spear*, 520 U.S. 154, 177-78 (1997) (internal quotations omitted); see *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1813-15 (2016) (applying *Bennett* test). An agency action is not final unless it satisfies both requirements. *National Pork Producers Council* v. *EPA*, 635 F.3d 738, 756 (5th Cir. 2011) ("that the guidance letters can meet the first *Bennett* prong is not enough"; "[t]o meet the second *Bennett* prong, the guidance letters must affect [petitioners'] rights or obligations or create new legal consequences").

### A. The EEOC Guidance Does Not Create Legal Consequences.

As demonstrated above, the EEOC Guidance is just that—guidance that sets forth the Commission's views on how employers' use of criminal history records in employment decisions may implicate Title VII prohibitions against discrimination, but that does not require employers to take *any* action, much less change their practices. See ROA.1242-1244. Any legal consequences resulting from Texas's use of criminal history records as an employer would flow from Title VII itself and court decisions applying the statute in any enforcement action brought by the Department of Justice, not from the Guidance and any investigations conducted by the EEOC. See, *e.g.*, *Luminant Generation Co., LLC* v. *EPA*, 757 F.3d 439, 442 (5th Cir. 2014) (Clean Air Act and state implementation plan, *not* challenged EPA notices, "set forth [petitioner's] rights and obligations").

Although Texas alleges that it has been harmed by the Guidance, the State has not identified any penalties, sanctions, or legal requirements imposed on it by the Guidance. Indeed, the Guidance does not reach any conclusions about the validity of any of Texas's employment policies. That can only be done in the context of an actual enforcement action by the Attorney General or a private suit, which would involve a court's *de novo* application of Title VII, not the Guidance. Accordingly, to the extent that Texas or any other employer is required to choose between changing its employment policies or facing potential liability, that choice is imposed by Title

VII itself, *not* the Guidance. Moreover, as we discuss more fully below (*infra* pp. 37-38), even assuming *arguendo* that Texas suffered a cognizable injury traceable to the Guidance from increased investigative costs, those at most are practical burdens, rather than legal consequences, and thus do not meet the requirements for establishing final agency action. See *Louisiana State v. United States Corps of Army Eng'rs*, 834 F.3d 574 (5th Cir. 2016); *National Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15-16 (D.C. Cir. 2005).

Under the Guidance, Texas thus has "no new legal obligation imposed on it" and has "lost no right it otherwise enjoyed." See *Luminant Generation Co.*, 757 F.3d at 442. The Guidance therefore cannot qualify as final agency action. *Id.*; *Peoples Nat'l Bank*, 362 F.3d at 337.

## B. The District Court's Analysis Fails to Support a Holding That the Guidance is Reviewable Final Agency Action.

The district court erroneously followed this Court's withdrawn panel majority opinion in *Texas I* when it held that the Guidance is final agency action. Although the court acknowledged that this Court's prior decision "was withdrawn so that [it] could, 'in its discretion,' consider the case 'in its entirety' and 'address the implications of *Hawkes*,'" the district court opined that the now-withdrawn panel majority's "discussion" was "instructive to [its] opportunity to re-examine the issues of standing,

ripeness, and 'final agency action,'" and adopted the analysis in the withdrawn majority opinion in full. ROA.1107-1109.

The district court primarily based its holding that the Guidance has legal consequences on two factors: (1) the Guidance is binding on EEOC employees; and (2) the Guidance establishes safe harbors for employers. ROA.1109. Neither factor supports the court's decision.

**1.** The first factor is irrelevant here, because the Guidance's effect on EEOC employees does not have any legal consequences for employers, as the Guidance does not confer on EEOC employees any authority to impose penalties for non-compliance with its provisions or applicable provisions of Title VII. Such liability can only be imposed by the courts, following *de novo* review. See *Chandler v. Roudebush*, 425 U.S. 840, 844-45 (1976). Even if the EEOC had never issued the Guidance (or the Guidance were repealed), Texas state agencies and other employers would be subject to Title VII's prohibition against disparate impact discrimination, and Title VII itself would still require the EEOC to investigate charges filed by individual employees. See 42 U.S.C. 2000e-5(b). Moreover, prior policy statements by the EEOC, cited in the Guidance, already made clear the agency's prior view that an employer's use of criminal history records in employment practices may, in certain circumstances, violate Title VII. ROA.663-667.

To be sure, federal agency employees are generally expected to follow their agency employers' view of the law in performing their duties. That fact, however, standing alone, does not render the agency's statement of its views "final agency action." Where, as here, an agency lacks authority to issue binding interpretations of a statute (see *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 257 (1991)), agency guidance on its interpretation of that statute does not have legal consequences. *E.g.*, *Luminant Generation Co.*, 757 F.3d at 442 & n.7; *American Tort Reform Ass'n v. OSHA*, 738 F.3d 387, 404-05 (D.C. Cir. 2013); *Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA*, 313 F.3d 852, 858-59 (4th Cir. 2002). And in determining whether agency action has "legal consequences," the focus should be on regulated parties, not the employees themselves. Cf. *American Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1049 (D.C. Cir. 1987) (in determining whether HHS directives are substantive rules, relevant focus is on impact on hospitals, *not* on contractors who administer directives on behalf of agency). The present case thus is distinguishable from cases in which an agency issues a substantive regulation that binds agency staff to require compliance with non-statutory mandates imposed by regulation, such as permitting or licensing requirements. Cf. *Barrick Goldstrike Mines Inc. v. Browner*, 215 F.3d 45 (D.C. Cir. 2000); *Appalachian Power Co. v. EPA*, 208 F.3d 1015 (D.C. Cir. 2000).

Here, in contrast, EEOC employees' application of the Guidance in administrative investigations does not bind Texas, the Department of Justice, or the

courts.  If the EEOC were to receive a charge of discrimination from an applicant

who was denied employment pursuant to a Texas state agency policy excluding

individuals with a particular criminal history, it would open an administrative

investigation (as it would with any charge). Such an administrative investigation is not

a sufficient "legal consequence" to constitute final agency action, however. *E.g.*, *Jobs,*

*Training & Servs., Inc. v. East Texas Council of Gov'ts*, 50 F.3d 1318, 1324 (5th Cir. 1995);

see *Federal Trade Comm'n v. Standard Oil Co.*, 449 U.S. 232, 242 (1980).  And if, after

investigation, the EEOC did not find reasonable cause, it would issue a right-to-sue

letter, which also would not be a final agency action. See *Newsome v. EEOC*, 301 F.3d

227, 232 (5th Cir. 2002); *Borg-Warner Protective Servs. Corp. v. EEOC*, 245 F.3d 831, 836

(D.C. Cir. 2001). Anyway, it is Title VII, not the Guidance, which requires the EEOC

to provide a claimant with notice of the right to sue.  See 42 U.S.C. § 2000e-5(b),

(f)(1).  The claimant could then file suit in district court and obtain *de novo* review.  If,

on the other hand, the EEOC did find reasonable cause and conciliation failed, the

agency would refer the case to the Attorney General.  The subsequent decision

whether to file suit would be made by the Department of Justice, which is not bound

either by the EEOC's reasonable cause determination, or by the Guidance.  See 42

U.S.C. § 2000e-5(f)(1).

   This Court's withdrawn panel majority opinion in *Texas I*, upon which the

district court relied, stated that "[w]e can certainly agree that an agency's decision to

investigate a specific regulated entity, including the issuance of subpoenas related to that investigation, normally does not constitute 'final agency action.'" 827 F.3d 372, 387 (5th Cir.), *reh'g granted, opinion withdrawn*, 838 F.3d 511 (5th Cir. 2016). That statement should have been dispositive. Regardless of whether the Guidance is a "blanket policy" that EEOC employees are required to follow (cf. *id.* at 382), it applies solely to how the EEOC conducts a preliminary, non-final step in the administrative process. It would be anomalous to hold that while neither an investigation nor a referral constitutes "final agency action," the Guidance, which is *not* binding on either the Department of Justice or the courts, does so qualify.

**2.** Although the second factor upon which the district court relied—whether the agency action creates safe harbors—is relevant to the *Bennett* test for finality, the court erred by holding that the Guidance provides safe harbors for employers. The court concluded that "the Guidance does, whether explicitly stated as such or not, create two specific 'safe harbors' that will protect an employer" from liability for disparate impact (ROA.1109), but it did not identify any specific provision of the Guidance that would do so. Presumably the court relied on the withdrawn panel majority opinion in *Texas I*, which it found "instructive." ROA.1107. The two examples cited by the panel majority (*Texas I*, 827 F.3d at 381), which involve the "job-related and consistent with business necessity defense," do not qualify as safe harbors, however, because they are couched in equivocal language. See ROA.1243,

ROA.1255 (there are "[t]wo circumstances in which the Commission *believes employers will consistently* meet the 'job-related and consistent with business necessity' defense") (emphasis added).

Indeed, the Guidance does not, nor could it, either guarantee that an employer will not be found liable in the event of a lawsuit or limit the ways in which an employer can establish the job-related and consistent with business necessity defense. A federal court would make those determinations, reviewing claims without any obligation to follow the Guidance. Accordingly, the Guidance states only that the Commission "believes" that certain practices will "consistently" meet statutory requirements. ROA.1243, ROA.1255. As Judge Higginbotham recognized in dissent in *Texas I*, "the Guidance contains no definitive or mandatory language"; to the contrary, its "mushy language cannot fairly be read as a promise to do anything." 827 F.3d at 395.

**3.** The district court also adopted the panel majority's determination in *Texas I* that under the Supreme Court's analysis in its recent decision in *Hawkes*, the Guidance qualifies as final agency action. ROA.1107-1109. The district court's reliance on *Hawkes* is misplaced.

In *Hawkes*, the Supreme Court held that an Army Corps of Engineers' jurisdictional determination ("JD") that a property contains "waters of the United States" under the Clean Water Act is "final agency action" under the APA. 136 S. Ct.

33

at 1813-15. The Court emphasized that the Corps' jurisdictional determination was a definitive ruling issued "after extensive factfinding." *Id.* The Court noted that the Corps and the EPA had a longstanding agreement that a jurisdictional determination is "binding on the Government[.]" *Id.* at 1814. The Court found that a jurisdictional determination concluding that property does *not* contain jurisdictional waters thus "binds the two agencies authorized to bring civil enforcement proceedings under the Clean Water Act," thereby creating a safe harbor for the property owner by "both narrow[ing] the field of potential plaintiffs and limit[ing] the potential liability a landowner faces[.]" *Id.* The Court held that "[e]ach of those effects is a 'legal consequence,'" and concluded that affirmative jurisdictional determinations "have legal consequences as well" because they "represent the denial of the safe harbor that negative JDs afford." *Id.*

The EEOC Guidance at issue here is readily distinguishable. The Guidance does not determine whether any particular employer policies violate Title VII. Neither the Department of Justice, nor any other government agency is bound by the Guidance. To the contrary, the Department's analysis of disparate impact claims in the context of criminal history records differs in a number of respects from that of the Guidance. See *supra* pp. 21-23. Moreover, as set forth above, the language of the Guidance is neither sufficiently definitive nor mandatory to establish a safe harbor; rather, the Commission refers to employer policies that it "believes" would meet

statutory requirements.  Accordingly, the sole legal consequence of the jurisdictional determination in *Hawkes* – *i.e.*, that it denied a safe harbor against government enforcement – is inapplicable.

Indeed, even if the EEOC were to conclude that a Texas policy violated Title VII, its conclusion would not bind the Department of Justice.  Conversely, if the EEOC were to find that a Texas policy complied with Title VII, the Department could still find otherwise and file suit, as could the employee.  The Guidance does not, nor can it, create a safe harbor guaranteeing that the Attorney General will not sue an employer.  Rather, the Attorney General is "free to embrace or disregard" the Guidance, "which is advisory and does not trigger the mandatory creation of legal rules, rights, or responsibilities." *Flue-Cured Tobacco*, 313 F.3d at 860.

Moreover, the panel majority in *Texas I* erred by concluding that if the EEOC dismisses a charge against Texas and does not refer it to the Attorney General, then the Department of Justice cannot file suit against the State.  827 F.3d at 381, 384 n.7. Section 707(a) of Title VII authorizes the Department to file a pattern or practice action in district court against a state government without a charge being filed with the EEOC (and therefore without EEOC investigation or referral).  42 U.S.C. § 2000e-6(a) (Attorney General can file enforcement action whenever he "has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by

this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described").[2]

In any event, even assuming *arguendo* that it created a safe harbor against government enforcement, the Guidance, in contrast to the jurisdictional determination at issue in *Hawkes*, would not limit the potential liability of a state employer. To the contrary, a private individual suing a Texas agency can seek the same monetary relief as the Department of Justice, and can, in addition, seek attorney's fees, which are not available in an action filed by the Department. See 42 U.S.C. § 2000e-5(k). And, unlike the jurisdictional determinations in *Hawkes*, which the Supreme Court emphasized were definitive rulings that "generally bind the Corps for five years," 136 S. Ct. at 1814, the Guidance merely states the EEOC's present non-binding views regarding Title VII. Finally, there is a "more fundamental distinction" between *Hawkes* and this case: "When the Corps issues a JD, it informs a *specific* party that it is or is not subject to the Clean Water Act, and thus, "[t]here is a

---

[2] The Attorney General has consistently relied on that section to bring disparate impact claims to enforce Title VII's prohibitions against employment discrimination. See*, e.g., United States v. City of Warren*, 138 F.3d 1083 (6th Cir. 1998); *United States v. County of Fairfax*, 629 F.2d 932 (4th Cir. 1980); *United States v. Lee Way Motor Freight, Inc.*, 625 F.2d 918 (10th Cir. 1979); *Firefighters Inst. for Racial Equality v. City of St. Louis*, 549 F.2d 506 (8th Cir. 1977). And this Court has held that Section 2000e-6(a) authorizes the Attorney General to pursue Title VII disparate impact claims. *United States v. Jacksonville Terminal Co.*, 451 F.2d 418, 443 (5th Cir. 1971).

direct engagement between the two parties." *Texas I*, 827 F.3d at 395 (Higginbotham, J., dissenting).  In contrast, "the EEOC has not taken any action against Texas"; rather, "it has issued a general statement of its view of the law." *Id.*

In this respect, the district court's decision is in tension with precedent of several courts of appeals, including this Court, that where an agency "merely expresses its view of what the law requires of a party, even if that view is adverse to the party," the agency's action is non-final.  *AT&T v. EEOC*, 270 F.3d 973, 975 (D.C. Cir. 2001); *Luminant Generation Co.*, 757 F.3d at 442 & n.7; *American Tort Reform Ass'n*, 738 F.3d at 404-05; *Flue-Cured Tobacco*, 313 F.3d at 858-59.  Here, the Guidance merely expresses the EEOC's views on how employers' use of criminal history records in hiring may or may not comply with Title VII.

**4.**  Even assuming *arguendo* that the Guidance has sufficient effect on potential EEOC investigations of Texas's use of criminal history in making employment decisions to constitute a traceable injury-in-fact, that effect would be a practical rather than legal consequence and thus would not suffice to satisfy final agency action requirements.  This Court's recent decision in *Louisiana State*, *supra*, which applied *Hawkes* and cited the subsequently withdrawn panel decision in *Texas I*, demonstrates why the Guidance is not final agency action.

In *Louisiana State*, this Court rejected the Army Corps of Engineers' argument that the transmittal to Congress of an agency 2008 Deauthorization Report

concerning a navigation channel, constituted final agency action under the APA. 834 F.3d at 581-84. The Court explained that "[v]iewed from the State's perspective," although the Deauthorization Report, which required the Corps to proceed with the closure, "may have put pressure on Louisiana to comply [with cost-sharing provisions] or else risk protracted negotiations with the Corps and a lengthy timetable for completing the closure of the MR-GO, *any such consequences are practical, as opposed to legal ones.*" *Id.* at 583 (emphasis added). The Court therefore held that under *Hawkes*, the Deauthorization Report did not satisfy the requirements for final agency action. *Id.* at 583-84.

Here, Texas's position similarly "conflates a potential *practical* effect with a *legal* consequence." *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 596 (9th Cir. 2008). Even if the Guidance made it more likely that an individual state employee or job applicant would file a charge in the first instance or that the EEOC would refer a charge to the Department of Justice, the Guidance does not "augment the [EEOC's or the Department of Justice's] legal authority to pursue enforcement action"; "[t]o the contrary, [Texas's] legal obligations * * * have always arisen solely on account of" Title VII. *Id.* Any potential effect of the Guidance on employers is a practical rather than legal consequence and therefore insufficient to satisfy the final agency action requirement.

## III. THE DISTRICT COURT'S INJUNCTION IS IMPERMISSIBLY VAGUE AND OVERBROAD.

**A.**  As we have demonstrated, Texas is not entitled to any relief in this case. But even assuming *arguendo* that it was proper for the district court to grant Texas any relief on its APA claim, this Court should vacate the injunction because it is vague and overbroad.  The judgment provided that the "EEOC and the Attorney General of the United States (in any enforcement action against the State of Texas) are **ENJOINED** from enforcing the EEOC's interpretation of the Guidance against the State of Texas until the EEOC has complied with the notice and comment requirements under the APA for promulgating an enforceable substantive rule."  ROA.2441.  In its order denying defendants' Rule 59(e) motion, the district court declined to clarify whether the injunction against enforcement of "the EEOC's interpretation of the Guidance" means that the EEOC and Attorney General are barred from enforcing the Guidance as such, or are barred from enforcing an interpretation of Title VII that is embodied in the Guidance.  See ROA.2472.  Because the court ruled against defendants solely on APA procedural grounds and did not rule on the substantive validity of any interpretation of Title VII in the Guidance, only the former interpretation is consistent with the court's legal holding.  See Fed. R. Civ. P. 65(d)(1)(B), (C) (every injunction must "state its terms specifically" and "describe in reasonable detail * * * the act or acts restrained or required.").

**B.** The district court's injunction is also overbroad, because it enjoins the Attorney General for an alleged APA procedural violation by the EEOC without any legal basis. As set forth above, the Department of Justice did not promulgate the Guidance, and the Attorney General neither enforces the Guidance nor is bound by it. Indeed, the Attorney General's approach to disparate impact claims challenging state and local governments' use of criminal history records in employment differs from that of the EEOC. See *supra* pp. 21-23. And current Department of Justice policy prohibits the Civil Rights Division from "enforcing" the Guidance in any event. See AAG Memo at 1. Accordingly, even assuming the court could properly find that the EEOC had violated the APA's notice-and-comment rulemaking requirements, such a finding would not provide any basis for enjoining the Attorney General from enforcing any particular interpretation of Title VII that might also be embodied in the Guidance.

## CONCLUSION

For the foregoing reasons, the district court's grant of partial summary judgment to Texas should be reversed, and the portion of the court's judgment that grants injunctive relief to Texas should be vacated.

Respectfully submitted,

JOSEPH H. HUNT
*Assistant Attorney General*

MARLEIGH D. DOVER
(202)-514-3511
s/ Stephanie R. Marcus
STEPHANIE R. MARCUS
(202) 514-1633
*Attorneys, Appellate Staff*
*Civil Division, Room 7539*
*Department of Justice*
*950 Pennsylvania Ave., N.W.*
*Washington, D.C. 20530*

September 5, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of September, 2018, I electronically filed the foregoing Brief For Appellants Cross-Appellees with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit by using the CM/ECF system. I further certify that on this 13th day of September, 2018, I served the foregoing Brief For Appellants Cross-Appellees on counsel of record for appellee/cross-appellant by electronic service via the CM/ECF system:

 s/ Stephanie R. Marcus
Stephanie R. Marcus

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(c), I hereby certify that the foregoing brief complies with the type-volume limitation in Fed. R. App. P. 32(a)(7)(B), the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. 32(a)(6). The word processing program (Microsoft Word 2010) used to prepare the brief reports that the brief is 9,494 words long. The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 with Garamond, 14 point font.

I further certify, pursuant to Fifth Circuit ECF Filing Standard A(6) that

(1) any required privacy redactions have been made;

(2) the electronic submission is an exact copy of the paper brief; and

(3) a virus check was performed on the electronic pdf version of this brief using Symantec Endpoint Protection on September 13, 2018, and no virus was detected.


 s/ Stephanie R. Marcus
Stephanie R. Marcus